UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
KEVIN PLANK and WILTON FIRFIGHTERS:
LOCAL 2233, on behalf of themselves and other:
individuals similarly situated,                                                 :
                                                                                         :
                                               Plaintiffs,       :
                                                                                         :        **MEMORANDUM &**
                        -against-                                       :        **ORDER GRANTING**
                                                                                         :        **DEFENDANTS' MOTION**
TOWN OF WILTON, THE RETIREMENT PLAN:                   **TO DISMISS**
FOR EMPLOYEES OF THE TOWN OF WILTON,:
JOSHUA COLE, RUTH DELUCA, KIMBERLY:                    3:23-CV-00808 (VDO)
HEALY, STEWART KOENIGSBERG, BASAM:
NABULSI, DAWN NORTON, ROSS TARTELL, and:
LYNNE VANDERSLICE,                                                  :
                                                                                         :
                                               Defendants.       :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiffs Kevin Plank and Wilton Firefighters Local 2233 (collectively, "Plaintiffs")

bring a class action alleging that Defendants Town of Wilton (the "Town"), the Retirement

Plan for Employees of the Town of Wilton (the "Retirement Plan"), Joshua Cole, Ruth

DeLuca, Kimberly Healy, Stewart Koenigsberg, Basam Nabulsi, Dawn Norton, Ross Tartell,

and Lynne Vanderslice (collectively, "Defendants") discriminated against Plaintiffs on the

basis on their age in violation of the Age Discrimination in Employment Act and the Older

Workers Benefit Protection Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, and the Connecticut

Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, by prohibiting

firefighters hired after the age of 40 from receiving normal retirement benefits under the

Retirement Plan. Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(2), 12(b)(5), and 12(b)(6). Because Plaintiffs have (re)effectuated service on

Defendants since the filing of the motion to dismiss, the Court **DENIES AS MOOT** Defendants' motion under Rules 12(b)(2) and 12(b)(5).

For the reasons discussed below, Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is **GRANTED**.

## I.  BACKGROUND

### A.  Factual Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of deciding Defendants' motion. Plaintiff Kevin Plank is a former firefighter for the Town of Wilton. (Compl., ECF No. 1, ¶ 2.) Plank was hired as a firefighter on September 8, 2008, when he was 50 years old. (*Id*. ¶¶ 9–10.) Upon hire, he became a member of Plaintiff Wilton Firefighters Local 2233, an affiliate of the International Association of Fire Fighters, and of the Retirement Plan. (*Id*. ¶¶ 2, 6, 9.)

Under the Retirement Plan, a member obtains their "Normal Retirement Date" and becomes eligible for "normal retirement" benefits based on their date of hire and years of service. (*Id*. ¶ 11.) For members such as Plank who were hired before July 1, 2015, the "Normal Retirement Date" is the later of reaching fifty years of age or completing twenty-five years of service. (*Id*. ¶ 12.) For employees hired after July 1, 2015, the "Normal Retirement Date" is the later of reaching fifty-two years of age or completing twenty-five years of service. (*Id*.) While a member can remain in active service after the "Normal Retirement Date," pursuant to the Retirement Plan, they must retire by "the last day of the month in which the[y] reach[] age sixty-five (65)." (*Id*. ¶ 14.) The Retirement Plan also provides for a voluntary "early retirement" option under which an employee may elect to retire upon reaching forty-five years

of age and completing ten years of credited service. (*Id.* ¶ 13.) The monthly benefit owed to a member who chooses early retirement is calculated using an "early retirement factor." (*Id.*)

In December 2022, Plaintiffs found out that Plank was being forced to retire pursuant to the Town's mandatory retirement policy requiring firefighters to retire at the age of sixty-five. (*Id.* ¶¶ 2, 15.) Plank retired on February 1, 2023, at which time he had 14.33 years of credited service. (*Id.* ¶¶ 16–17.) Because Plank had not earned twenty-five years of credited service at retirement, the monthly benefit owed to him was calculated as if he had exercised the voluntary early retirement option, which effectively reduced his monthly benefit amount by more than 75%. (*Id.* ¶ 18.) Plaintiffs allege that every firefighter hired over the age of forty is automatically discriminated against because they are unable to receive normal retirement benefits due to the Town's mandatory retirement age of sixty-five coupled with the twenty-five years of service requirement. (*Id.* ¶ 19.)

### B. Procedural Background

Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") and Connecticut Commission on Human Rights and Opportunities ("CHRO") and subsequently received Right to Sue letters and a Release of Jurisdiction from these agencies. (*Id.* ¶¶ 20–22.) They filed the instant action on June 21, 2023 and raised four claims against Defendants—(1) disparate treatment in violation of the ADEA, (2) disparate impact in violation of the ADEA, (3) disparate treatment in violation of the CFEPA, and (4) disparate impact in violation of the CFEPA—and seek declaratory judgment, injunctive relief, and attorneys' fees. (*See generally* Compl.) On September 19, 2023, Defendants filed their motion to dismiss. (Def. Mot., ECF No. 30.) Plaintiffs opposed on October 26, 2023 (Pl. Opp., ECF No. 42), and Defendants filed a reply on November 20, 2023. (Reply, ECF No. 46.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

Defendants contend that the Complaint should be dismissed because (1) the individual defendants and the Retirement Plan are not subject to liability under the ADEA or CFEPA; (2) Plaintiffs failed to exhaust their administrative remedies for their disparate impact claims; and

(3) Plaintiffs failed to state either a disparate treatment or disparate impact claim. (*See generally* Def. Mem., ECF No. 30-1.) The Court addresses each of these arguments in turn.

### A.    Liability of the Individual Defendants and Retirement Plan

Defendants first argue that Plaintiffs' claims against the individual defendants and the Retirement Plan should be dismissed because these defendants are not subject to liability under the ADEA or CFEPA. (Def. Mem. at 10–12.) The Court agrees.

Section 4(a)(1) of the ADEA provides that "[i]t shall be unlawful for an **employer** . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1) (emphasis added). As a preliminary matter, the Retirement Plan defines "firefighter" as "any person . . . **employed by the Town** as a firefighter . . ." (Retirement Plan, ECF No. 1-1, at 64; *see also* Compl. ¶ 8 ("Defendant Wilton employed Plaintiff Plank").) Not only does the Retirement Plan explicitly state that the Town is the firefighters' employer, "individuals may not be held liable under the ADEA." *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 51 n.3 (S.D.N.Y. 2019); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) ("[C]ourts in the Second Circuit have consistently held that the ADEA does not impose liability on individuals."). Therefore, the Court dismisses the ADEA claims against the individual defendants named in the Complaint. *See Women in City Gov't United v. City of New York*, 515 F. Supp. 295, 299 (S.D.N.Y. 1981) (trustees who approve retirement plan may not be personally liable under Title VII).[1]

---

[1] "Claims under the ADEA . . . receive the same analysis as claims under Title VII." *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997).

Conn. Gen. Stat. § 46a-60(b)(1) likewise does not provide for individual liability. Because "there is no individual liability under CFEPA," *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 267 (D. Conn. 2010) (citing *Perodeau v. City of Hartford*, 792 A.2d 752, 761 (Conn. 2002)),[2] the Court grants Defendants' motion to dismiss the CFEPA claims against the individual defendants.

Further, the Court dismisses the ADEA and CFEPA claims against the Retirement Plan because Plaintiffs do not oppose Defendants' argument that the Retirement Plan is not subject to liability under these statutes; thus, Plaintiffs have abandoned their claims against the Retirement Plan. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) (affirming dismissal of claims "on the ground that they were 'abandoned' by [the plaintiff] when she failed to oppose them in her opposition to [the defendant's] motion to dismiss"); *Massie v. Wells Fargo Bank, N.A.*, No. 23-CV-01548 (VDO), 2024 WL 2314979, at *5 n.4 (D. Conn. May 22, 2024) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.") (internal citation and quotation marks omitted). In any event, to the extent Plaintiffs characterize the Retirement Plan as a pension fund that has the legal capacity to be sued (*see*

---

[2] Individual defendants may be held liable under CFEPA, however, for aiding and abetting discriminatory employment practices. *See Edwards v. New Opportunities Inc.*, No. 05-CV-1238 (JCH), 2006 WL 1668020, at *3 (D. Conn. June 16, 2006); Conn. Gen. Stat. § 46a-60(b)(5) ("It shall be a discriminatory practice . . . [f]or any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or attempt to do so[.]"). Plaintiffs do not assert an aiding and abetting claim and do not invoke any specific subsection of § 46a-60 in their CFEPA claims, let alone section 46a-60(b)(5).

Compl. ¶ 8),[3] the ADEA does not permit claims brought by an employee against a pension

fund even though it contains provisions relating to age discrimination in pension plans. *See*

*Guzman v. Bldg. Serv. 32BJ Pension Fund*, No. 22-CV-01916 (LJL), 2023 WL 2526093, at

*17 (S.D.N.Y. Mar. 15, 2023) (dismissing ADEA claim against pension fund). Because

analysis of claims under the CFEPA and ADEA is the same, *Aiello v. Stamford Hosp. Inc.*,

No. 09-CV-1161 (VLB), 2010 WL 3925451, at *6 (D. Conn. Sept. 29, 2010), the Court finds

that a pension fund also cannot be held liable under the CFEPA.

Accordingly, the Court dismisses the Complaint against Joshua Cole, Ruth DeLuca,

Kimberly Healy, Stewart Koenigsberg, Basam Nabulsi, Dawn Norton, Ross Tartell, Lynne

Vanderslice, and the Retirement Plan, and analyzes Plaintiffs' claims as against the Town only.

### B.        Exhaustion of Administrative Remedies for Disparate Impact Claims

Next, Defendants maintain that the Plaintiffs' disparate impact allegations must be

dismissed because they were not raised before the EEOC or CHRO. (Def. Mem. at 18–20.)

There is no dispute that, to maintain an action under the ADEA and CFEPA, a plaintiff must

timely file administrative charges and receive jurisdictional releases from the administrative

---

[3] The Court notes that the Retirement Plan is defined as a "defined benefit pension plan." Meeting of the Trustees of the Retirement Plan for the Employees of the Town of Wilton and the Wilton Employees Retirement Plan Investment Committee (Sept. 17, 2018), *available at* https://www.wiltonct.gov/sites/g/files/vyhlif10026/f/minutes/town-of-wilton-pension-plan.pdf.

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998). As such, the Court takes judicial notice of the Town committee's meeting minutes and of the Town's website. *See, e.g.*, *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (stating that courts may take judicial notice of documents from official government websites); *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs,* 488 F. Supp. 2d 22, 25–26 (D.N.H. 2007) (taking judicial notice of city zoning board's meeting and decision, and of minutes of zoning board's meeting).

agencies. *See* 29 U.S.C. § 626(d); Conn. Gen. Stat. §§ 46a–82, 46a–100, 46a–101. According to Defendants, because the Plaintiff did not expressly allege disparate impact in the administrative charges, the releases of jurisdiction did not include those claims, which, as a result, are not before the Court.

"[C]laims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are reasonably related to the claim filed with the agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d. Cir. 2015) (internal citation and quotation marks omitted). "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the . . . investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)). In evaluating administrative exhaustion under this standard, the Court should consider whether "the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action[.]" *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008). "The central question is whether the complaint . . . gave th[e] agency 'adequate notice to investigate discrimination on both bases.'" *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)); *see also Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 282 n.5 (D. Conn. 2009) ("Claimants are required to be sufficiently specific in their administrative charges so that the administrative agency and the respondent are put on notice as to what the claims are."). The Second Circuit has characterized this exception to the exhaustion requirement as "essentially an allowance of loose pleading" that is "based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their

primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering.'" *Williams*, 458 F.3d at 70 (citation omitted).

"[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018); *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5 (E.D.N.Y. 2013) ("The failure to exhaust administrative remedies is an affirmative defense, for which defendant bears the burden of proof."). Although Defendants assert that Plaintiffs did not raise disparate impact claims in their EEOC and CHRO charges, they did not provide the Court with copies of the actual charges. Without the charges, the Court cannot evaluate whether Plaintiffs raised disparate impact claims therein, or whether the factual allegations contained in the charges can be fairly read to encompass the disparate impact claims brought in this action. Consequently, Defendants' failure to provide the charges to the Court renders it impossible for the Court to evaluate whether Plaintiffs exhausted their administrative remedies. *See McKenzie v. Big Apple Training Inc.*, No. 22-CV-9554 (GHW), 2023 WL 4866041, at *6–7 (S.D.N.Y. July 31, 2023).

### C.    Plaintiffs' ADEA Disparate Impact Claim

Even if Plaintiffs had brought disparate impact claims in their administrative charges such that they properly exhausted their administrative remedies, the Complaint's ADEA disparate impact claim does not withstand Defendants' motion to dismiss.

ADEA claims may be based on allegations of both disparate treatment and disparate impact, *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005), as they are alternative theories of liability. *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992). Claims of disparate impact "involve employment practices that are facially

neutral in their treatment of different groups but that in fact fall more harshly on one group than another" and do not require "[p]roof of discriminatory motive[.]" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). To establish a *prima facie* case of disparate impact under the ADEA, Plaintiffs must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 479 (S.D.N.Y. 2019) (citing *Attard v. City of New York*, 451 F. App'x 21, 24 (2d Cir. 2011)); *Gordon v. City of New York*, No. 14-CV-6115 (JPO), 2018 WL 4681615, at *22 (S.D.N.Y. Sept. 28, 2018). "[T]he employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Smith*, 544 U.S. at 241 (internal quotation marks and citation omitted). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Id.*

Instead of alleging that the Town instituted a facially neutral policy, Plaintiffs assert just the opposite—that "the Town, the Retirement Plan and its Trustees rely upon a ***formal, facially discriminatory policy*** set forth in the Retirement Trust requiring adverse treatment because of age in violation of the ADEA." (Compl. ¶ 27 (emphasis added); *see also id.* ¶ 30 ("the Retirement Trust ***was drafted in a manner to affirmatively discriminate*** against [Plank], and others similarly situated to him") (emphasis added).) While Plaintiffs claim that the Town's policy has a "significantly disproportionate impact on employees hired after they are older than age 40 years old" (*id.* ¶ 34), there are simply no allegations of a facially neutral practice or policy that fell more harshly on those over the age of forty. *See Maresco*, 964 F.2d

at 115.[4] Absent any such allegation to satisfy the first element of a disparate impact claim and regardless of how Plaintiffs label their claims, the Complaint contains claims of only disparate treatment. The ADEA disparate impact claim is dismissed accordingly.[5]

### D.      Plaintiffs' ADEA Disparate Treatment Claim

ADEA claims are analyzed using the same framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) for proving a claim under Title VII. *Walker v. The Access Agency*, No. 02-CV-199 (AHN), 2004 WL 2216526, at *3 (D. Conn. Aug. 31, 2004). A *prima facie* disparate treatment claim under the ADEA is established when Plaintiffs "'demonstrate membership in a protected class, qualification for their position, an adverse employment action, and circumstances that support an inference of age discrimination.'" *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). "[L]iability depends on whether the protected trait (under the ADEA, age) *actually motivated* the employer's decision." *Hazen Paper*, 507 U.S. at 610 (emphasis added).

---

[4] In *Maresco*, the facially neutral employment practice invoked by the plaintiff to support his disparate impact claim "coalesce[d] with the discharge which he claim[ed] to have constituted disparate treatment." *Id*. The Second Circuit held that "allowing the disparate impact doctrine to be invoked as [the plaintiff] proposes would simply provide a means to circumvent the subjective intent requirement in any disparate treatment case." *Id.* Likewise, here, the employment policy supporting Plaintiffs' disparate impact claims is the same employment policy supporting the disparate treatment claims. This is impermissible under *Maresco* because it provides a means for Plaintiffs to avoid establishing the subjective intent requirement for their disparate treatment claims.

[5] Additionally, in order to sustain a disparate impact claim under ADEA, a plaintiff must allege a disparate impact on the *entire* protected group, *i.e.*, those over age 40. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 n.6 (2d Cir. 2001); *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997); *Foley v. City of Danbury*, No. 00-CV-712, 2001 WL 263302, at *7 (D. Conn. Mar. 9, 2001). Here, Plaintiffs allege that the Town's policy disparately impacts only those *hired* over the age of 40, and thus, their ADEA disparate impact claim also fails on these grounds.

Plaintiffs' contention that "every firefighter the Town of Wilton hires over the age of 40 will automatically be discriminated against in the amount of their pension benefit compared to fire fighters hired at younger ages, because it will be impossible for these older workers to obtain normal retirement benefits solely and exclusively because of their age due to the 25 year service requirement coupled with the Town's mandatory retirement age of 65 for firefighters" (Compl. ¶ 19) does not give rise to a disparate treatment claim under the ADEA. First, the Town's policy requiring mandatory retirement of firefighters at age 65 does not violate the ADEA; second, age did not "actually motivate" the Town's decision to deny normal retirement benefits to Plaintiffs since the calculation of pension benefits is based on years of service.

### 1.    The Town's Mandatory Retirement Policy Does Not Violate the ADEA.

In 1986, Congress amended the ADEA to allow state and local governments to mandate the retirement of law enforcement officers and firefighters. This section was repealed in 1993, but in 1996, Congress again amended the ADEA to indefinitely reinstate the law enforcement and firefighter exemption retroactively to the termination of the 1986 provision. *See Feldman v. Nassau Cnty.*, 434 F.3d 177, 181 (2d Cir. 2006); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 68–69 (2000) ("[M]andatory age limits for law enforcement officers and firefighters—at federal, state, and local levels—are exempted from the [ADEA's] coverage."). Under this provision (29 U.S.C. § 623(j)), state and local governments are allowed to set mandatory retirement ages for firefighters and law enforcement officers if two requirements are met: (1) the discharge must have been pursuant to a state or local law requiring mandatory retirement

by a certain age, and (2) the discharge must be pursuant to a bona fide[6] retirement plan that is

not a subterfuge for impermissible age discrimination. 29 U.S.C. § 623(j)(1)–(2). This

exception "expressly contemplates discrimination on the basis of age." *Feldman*, 434 F.3d at

184.

The Complaint alleges that, at the time he was forced to retire, Plank was a firefighter

for the Town of Wilton and had been a Wilton firefighter since 2008. (Compl. ¶¶ 2, 9.) Conn.

Gen. Stat. § 7-430 provides: "Any member, except an elective officer, who has attained the

age of sixty-five years if employed as a policeman or fireman shall be retired on the day

following the attainment of such age[.]" Conn. Gen. Stat. § 7-430. In accordance with this law,

the Town set a "mandatory retirement age of the last day of the month in which the Member

reaches age sixty-five (65)." (Retirement Plan at 66.) Since Plank was discharged pursuant to

Connecticut law and a corresponding Town policy mandating retirement at sixty-five, the

requirement set forth in § 623(j)(1) is satisfied.

As for the second requirement, it is Plaintiffs' burden to prove that the Town's

application of the exception to the ADEA's general prohibition against age discrimination is,

in fact, subterfuge. *See Feldman*, 434 F.3d at 184 ("Plaintiff bears the burden of establishing

that a particular [retirement] plan is a subterfuge under section 4(j)(2)."). Subterfuge has been

defined as "a scheme, plan, stratagem, or artifice of evasion." *Public Emps. Ret. Sys. of Ohio*

*v. Betts*, 492 U.S. 158, 167 (1989). The *Betts* Court explained that subterfuge may exist where

"an employer [] adopted a plan provision formulated to retaliate against [] an employee" who

has "opposed any action made unlawful by the [ADEA] or has participated in the filing of any

---

[6] "Bona fide" "means that the plan exists and pays benefits." *Libront v. Columbus McKinnon Corp.*, 832 F. Supp. 597, 608 (W.D.N.Y. 1993).

age-discrimination complaints or litigation," or where an employer decides "to reduce salaries for all employees while substantially increasing benefits for younger workers[.]" *Id.* at 180 (internal quotation marks omitted). In other words, a plaintiff must show "'that the employer is using the exemption as a way to evade another substantive provision of the [ADEA].'" *Feldman*, 434 F.3d at 184 (quoting *Minch v. City of Chicago*, 363 F.3d 615, 629 (7th Cir. 2004)); *see also Betts*, 492 U.S. at 181 ("[T]he employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation.").

Although the word "subterfuge" appears nowhere in the Complaint, the Court will construe Plaintiffs' allegation that "the purpose of the Retirement Trust provisions at issue was to keep pension costs down by ensuring that older hired firefighters could not achieve normal retirement pension benefits" (Compl. ¶ 35) as their attempt at articulating why the Retirement Plan is a subterfuge. Without more, Plaintiffs' alleged economic reason for the Retirement Plan—"to keep pension costs down"—is not enough to plausibly allege that the Town is using the mandatory retirement requirement as a way to evade another substantive provision of the ADEA or to discriminate against older firefighters in some other respect aside from the allocation of retirement benefits under the Retirement Plan.

Because Plaintiffs failed to adequately allege that the Retirement Plan is a subterfuge, § 623(j)(2) is satisfied. The Town's mandatory retirement policy does not violate the ADEA.

### 2. Age Did Not Actually Motivate the Denial of Normal Retirement Benefits.

As the Complaint states, a Wilton firefighter hired before July 1, 2015 is entitled to normal retirement benefits upon the later of reaching fifty years of age or completing twenty-

14

five years of service, and a firefighter hired after July 1, 2015 is entitled to normal retirement

benefits upon the later of reaching fifty-two years of age or completing twenty-five years of

service. (Compl. ¶ 12.) Plank was denied normal retirement benefits because he did not

complete the requisite twenty-five years of service, as he was hired when he was fifty years

old and was forced to retire at the age of sixty-five. (*Id.* ¶¶ 2, 9, 18.) Irrespective of the

mandatory retirement policy, which does not violate the ADEA, the Court determines that

Plank was denied normal retirement benefits not because of his age, but because he did not

complete the requisite years of service. These two factors, while correlated, are analytically

different.

*Hazen Paper* and *Kentucky Retirement Systems v. E.E.O.C.*, 554 U.S. 135 (2008)

illustrate this point. Holding that "an employer does not violate the ADEA just by interfering

with an older employee's pension benefits that would have vested by virtue of the employee's

years of service," *Hazen Paper*, 507 U.S. at 613, the *Hazen Paper* Court explained:

> When the employer's decision *is* wholly motivated by factors other than age,
> the problem of inaccurate and stigmatizing stereotypes disappears. This is true
> even if the motivating factor is correlated with age, as pension status typically
> is. Pension plans typically provide that an employee's accrued benefits will
> become nonforfeitable, or "vested," once the employee completes a certain
> number of years of service with the employer. See 1 J. Mamorsky, Employee
> Benefits Law § 5.03 (1992). On average, an older employee has had more years
> in the work force than a younger employee, and thus may well have accumulated
> more years of service with a particular employer. Yet an employee's age is
> analytically distinct from his years of service. An employee who is younger than
> 40, and therefore outside the class of older workers as defined by the ADEA,
> see 29 U.S.C. § 631(a), may have worked for a particular employer his entire
> career, while an older worker may have been newly hired. Because age and
> years of service are analytically distinct, an employer can take account of one
> while ignoring the other, and thus it is incorrect to say that a decision based on
> years of service is necessarily "age based."

*Id.* at 611. Reiterating the *Hazen Paper* decision, the *Kentucky* Court provided an example of how a plan that creates a disparity between individuals does not automatically render the plan discriminatory.

> [O]ne can readily construct a plan that produces an identical disparity but is age neutral. Suppose that Kentucky's Plan made eligible for a pension (1) day-shift workers who have 20 years of service, and (2) night-shift workers who have 15 years of service. Suppose further that the Plan calculates the amount of the pension the same way in either case, which method of calculation depends solely upon years of service (say, giving the worker a pension equal to $1,000 for each year of service). If the Plan were [] to provide workers who become disabled prior to pension eligibility the same pension the workers would have received had they worked until they became pension eligible, the Plan would create a disparity between disabled day-shift and night-shift workers: A dayshift worker who becomes disabled before becoming pension eligible would, in many instances, end up receiving a bigger pension than a night-shift worker who becomes disabled after becoming pension eligible. . . .
>
> The disparity in this example is not "actually motivated" by bias against night-shift workers. Rather, such a disparity, like the disparity in the case before us, is simply an artifact of Plan rules that treat one set of workers more generously in respect to the *timing of their eligibility for normal retirement benefits* but which do not treat them more generously in respect to the *calculation of the amount* of their normal retirement benefits. The example helps to show that the Plan at issue in this case simply seeks to treat disabled employees as if they had worked until the point at which they would be eligible for a normal pension. The disparity turns upon pension eligibility and nothing more.

554 U.S. at 145–46.

As stated in these cases and as is the situation here, the time at which an employee's benefits vest under a pension plan typically depends on their years of service, not their age. Under the Retirement Plan, those who are hired before the age of forty may be treated more favorably than those hired after the age of forty *solely* with respect to the timing of their eligibility for normal retirement benefits. Nevertheless, a similarly situated comparator—*e.g.*, someone who was hired before the age of forty with 14.33 years of service and retires—would also be denied normal retirement benefits pursuant to the terms of the Retirement Plan. In fact,

the Retirement Plan arguably makes it *easier* for a firefighter who was hired at an older age to receive normal retirement benefits because, depending on the age at hire, older firefighters may have to work for fewer years to obtain normal retirement benefits than someone younger. Specifically, someone hired at the age of 19 would not be entitled to such benefits until they are fifty-two years old—*i.e.*, after completing thirty-three years of service, whereas someone hired precisely at the age of forty would be eligible to receive normal retirement benefits upon completion of twenty-five years of service. Any disparity between those firefighters hired before the age of forty and those hired after turns on eligibility for normal retirement benefits and nothing more.

Based on the foregoing, the Court cannot conclude that Plaintiffs have sufficiently alleged the Town discriminated against those who were hired after the age of forty, as their age was not the motivating factor for the denial of normal retirement benefits.[7]

Because Plaintiffs have failed to establish the fourth element of their *prima facie* case— that the circumstances surrounding the denial of normal retirement benefits give rise to an inference of discrimination—their disparate treatment claim under the ADEA is dismissed.

### E.    Plaintiffs' State Law Claims

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because the Court dismisses Plaintiffs' federal claims under the ADEA,

---

[7] The Court also notes that Plaintiffs have not plausibly alleged that age was the motivating factor for the Town's decision because their claims are predicated upon the "Retirement Plan's 25 years['] service requirement **coupled with** the Town's mandatory retirement age of 65 for firefighters." (Compl. ¶ 19 (emphasis added).) And had Plaintiffs alleged that the years of service requirement, alone, violates the ADEA, that claim would fail. *See Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012).

the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims under the CFEPA, and those claims are dismissed without prejudice to refiling in state court. *See Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir. 2006).

### F.      Leave to Amend

Plaintiffs summarily request an opportunity to amend their Complaint. (Pl. Opp. at 21.) "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "a motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)).

No amendments to the Complaint, including additional factual allegations, can render Plaintiffs' ADEA and CFEPA claims against the individual defendants and the Retirement Plan valid. That is because none would change the conclusion that, under federal and Connecticut law, the ADEA and CFEPA do not provide for individual liability. It is unclear to the Court whether Plaintiffs will be able to amend their Complaint to state a cognizable ADEA or CFEPA claim against the Town. Nonetheless, Plaintiffs' current request for leave to replead is denied without prejudice to the filing, within fourteen (14) days of this Order, of a formal motion for leave to replead their claims against the Town that includes a copy of the proposed Amended Complaint.

## IV.      CONCLUSION

For these reasons, Defendants' motion to dismiss (ECF No. 30) is **GRANTED**. The Complaint is **dismissed without prejudice** as to the Town and **dismissed with prejudice** as

to the individual defendants and the Retirement Plan. Plaintiffs may file a motion for leave to replead their claims against the Town with a copy of their proposed Amended Complaint within **fourteen (14) days** of this Order. Failure to file said motion by this deadline will result in the dismissal of Plaintiffs' claims against the Town **with prejudice**.

The Clerk is directed to terminate the Retirement Plan for Employees of the Town of Wilton, Joshua Cole, Ruth DeLuca, Kimberly Healy, Stewart Koenigsberg, Basam Nabulsi, Dawn Norton, Ross Tartell, and Lynne Vanderslice as defendants in this action.

**SO ORDERED.**

Hartford, Connecticut
September 5, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge